IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**SHERETA L. PEELER,**

      **Plaintiff,**

v.                                                        Case 2:20-cv-02923-JTF-cgc

**SELECT SPECIALTY HOSPITAL,**

      **Defendant.**

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Select Specialty Hospital's ("Defendant" or "Select") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") # 42). Pursuant to Administrative Order 2013-05, the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

**I.   Background**

On April 15, 2022, Plaintiff Shereta L. Peeler filed a *pro se* Complaint alleging employment discrimination on the basis of pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (D.E. #1). Specifically, Plaintiff alleges that she informed her employer of her pregnancy and her pregnancy-related restrictions on or about January 17, 2020 but was informed that she must return to work "full duty without restrictions."

(*Id.*)  Plaintiff alleges that the company's treatment of her during her pregnancy was inconsistent with how she was treated on another occasion when she was injured and was allowed to work "light duty" for a period of three to four months.  (*Id.*)  Plaintiff alleges that she was discharged from her employment thereafter.  (*Id.*)

On April 15, 2022, Defendant filed the instant Motion for Summary Judgment along with its Statement of Undisputed Material Facts (D.E. #42-3), the Declaration of Edward S. Chambers[1] (D.E. #42-1 ("Chambers Decl.")), and excerpts from Plaintiff's deposition (D.E. #42-2 ("Pl.'s Dep.").  First, Defendant argues that it is undisputed that Plaintiff was not qualified for her position at the time of her termination due to her excessive absences, her violation of the Safe Patient Handling Policy, and her failure to communicate her intent to remain employed in response to a letter requiring her to do so.  Second, Defendant argues that it is undisputed that Plaintiff's employment was terminated due to legitimate, non-discriminatory reasons that were not pretextual in nature.

On April 19, 2022, Plaintiff filed a one-page Response in opposition to Defendant's Motion for Summary Judgment.  (D.E. #43).  Although Plaintiff's Response includes her discussion of the facts, it does not respond to Defendant's Statement of Undisputed Material Fact as required by Local Rule 56.1(b).  Further, while it contains some factual discussion, it neither contain citations to evidence already in the record nor includes an additional statement of Plaintiff's undisputed facts along with her own citations as required by Local Rule 56.1(b).  In

---

[1]  Chambers serves as a human resources manager for Select and declared that he is familiar with its records and the facts relating to Plaintiff's employment.  (Chambers Decl. ¶ 1).

addition to these failures, Plaintiff's Response also contains no legal citations in support of her arguments.

On May 2, 2020, Defendant filed its Reply noting Plaintiff's failure to respond to its Statement of Undisputed Material Fact and to provide any citations to evidence in the record to support her own statements of fact. (D.E. #46). In light of this failure, Defendant's asserted facts should be deemed as undisputed for purposes of summary judgment pursuant to Local Rule 56.1(d).

On May 3, 2020, the undersigned issued an Order acknowledging that Plaintiff's Response failed to comply with Local Rule 56.1 but permitting Plaintiff another thirty days to file her response to Defendant's Statement of Undisputed Material Facts along with any statement of additional facts . The Order stated that those documents must conform with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1, and it provided citations to internet addresses with the text of these rules. (D.E. # 47)

On May 4, 2020, Plaintiff filed a two-page response to Defendant's Motion for Summary Judgment. (D.E. #48). This document again did not respond to Defendant's Statement of Undisputed Facts as required by Local Rule 56.1(b) and did not include any citations to the record. Accordingly, pursuant to Local Rule 56.1(d), it is RECOMMENDED that Defendant's Statement of Undisputed Material Fact be deemed as undisputed for purposes of summary judgment.

## II.     Proposed Findings of Fact

Select is a critical-illness recovery hospital that provides diagnostic and medical treatment to patients with chronic disease or complex medical conditions. (Chambers Decl. ¶2). Select hired Plaintiff in February 2019 as a certified nursing assistant ("CNA"). (Pl.'s Dep. at 12:15-13:12). Upon her hiring, Select provided her with an employee handbook ("Handbook") that detailed the scope of her job responsibilities and Select's policies, including patient care expectations, attendance, and equal employment opportunity policies. (Pl.'s Dep. at 40:4-14 & Exh. 13). Select views reliable attendance, effective communication, and adherence to policies as essential to performing the functions of a CNA's job. (Chambers Decl. ¶ 3). Plaintiff admits that she did not read the Handbook detailing these responsibilities. (Pl.'s Dep. at 40:4-14).

In April 2019, Plaintiff received a written warning for an absence from work during her introductory period. (Pl.'s Dep. at 22:1-10 & Exh. 2). She was also given counseling on "how the point system worked." (Pl.'s Dep. at 22:1-10). At the time of her employment, Select's Attendance Disciplinary Action Form lists that an unscheduled absence results in three points being added to an employee's attendance record and that termination was an option with "20 or more points." (Chambers Decl. ¶ 5; Pl.'s Dep. at Exhs. 1, 2, 3, 11).

Plaintiff accrued two more absences on May 25 and June 12, 2019. (Pl.'s Dep. at Exh. 1). On July 5, 2019, Plaintiff received another written warning related to her attendance. (*Id*. at Exh. 3, 11). On July 12 and 19, 2019, Plaintiff had two more absences, which brought her to 18 points on her attendance record. (*Id*. at Exh. 1).

On August 12, 2019, Plaintiff was placed on work restrictions by her doctor. (*Id*. at Exh. 9). On August 15, 2019, Plaintiff was disciplined for failure to follow Select's Safe Patient Handling Policy. (*Id*. at Exh. 7). On September 10, 2019, Plaintiff accepted a temporary, transitional duty assignment that allowed her to remain employed while complying with her doctor's restrictions. (*Id*. at Exh. 9). The temporary duty assignment stated that it would be available for no longer than 90 days unless extended based upon medical necessity. (*Id*.)

On October 4, 2019, Plaintiff requested to be placed on "p.r.n., as needed status," which would involve her working roughly three shifts per month. (Pl.'s Dep. at 45:17-46:7). Per diem or "p.r.n." employees remained subject to Select's attendance policy. (Chambers Decl. ¶ 6). On November 19 and December 1, 2019, Plaintiff accumulated two additional absences on her attendance record, bringing her total to twenty-four points. (Pl.'s Dep. at Exh. 1).[2] Select viewed her "repeated and excessive absenteeism" as a demonstration that she "could not be relied on to attend work when scheduled"; however, instead of terminating Plaintiff, Select chose to give Plaintiff another written warning for her attendance. (Pl.'s Dep. at Exh. 11).

On or about January 16, 2020, Plaintiff informed Select that she was pregnant and provided a note from her doctor recommending that she follow certain restrictions in the workplace. (Pl.'s Dep. at 48:3-49:5). After reviewing the proposed restrictions, Select determined that there was no position that could accommodate them. (Chambers Decl. ¶ 9).

---

[2] Chambers' Declaration states that twenty-four points on the attendance record "warrant[s] termination under Select's attendance policy"; however, the Handbook does not set forth any specific policy regarding attendance points. (*See* Pl.'s Dep. at Exh. 13). Instead, it is Select's Attendance Disciplinary Form that states that, after the introductory period, a "first warning" may occur with "12 or more points," that a "written warning" may occur with "16 or more points," and that termination may occur with "twenty or more points." (*Id*. at Exhs. 2, 3, 11).

5

Select did not terminate Plaintiff's employment at that time, and no one from Select informed her that her employment was terminated. (*Id*. ¶ 11; Pl.'s Dep. at 55:1-18). Despite being aware of Select's Open Door Policy, Plaintiff did not discuss any concerns of discrimination with anyone at Select. (Pl.'s Dep. at 55:24-56:13).

On February 3, 2020, Select mailed Plaintiff a letter stating that she had not met the minimum requirement to remain in the "PRN pool" and that, if she would like to remain employed with Select, she must "log in to schedule shifts or notify Jennifer Harris, CNO." (Pl.'s Dep. at 12). The letter further stated that, "[o]therwise, this is a formal notice of separation of employment with Select . . . as of February 3, 2020 due to failure to meet PRN requirements." (*Id*.) Plaintiff acknowledged receiving the letter but did not contact Select and did not schedule a shift. (*Id*. at 51:19-54:6). Select states that it ultimately terminated her "because she did not meet Select's expectations of its employees regarding attendance, safe patient handling, and communication of her desire to remain employed when given a clear deadline to do so." (Chambers Decl. ¶ 13).

### III. Proposed Analysis and Conclusions of Law

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th

6

Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). Discrimination on the basis of sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions" and requires women affected by these conditions to be treated the same for all employment-related purposes. 42 U.S.C. 2000e(k).

A plaintiff may establish a claim of pregnancy discrimination either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). Here, the undisputed material facts do not require the conclusion that her termination was based upon her pregnancy.

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of pregnancy discrimination, which requires as follows: (1) she was pregnant; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and, (4) there is a nexus between her pregnancy and the adverse employment decision. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).

In order to prove that she is qualified for her position, a plaintiff must prove that she was performing her job at a level which met her employer's legitimate expectations. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (citing *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983) (analyzing an age-discrimination claim under Michigan law under the same *McDonnell-Douglas* framework as ADEA claims); *Santana v. U.S. Tsubaki, Inc.*, 932 F. Supp. 189, 191 (6th Cir. 1995) (relying upon *McDonald* in analyzing the qualification prong of a Title VII race-discrimination claim). For a claim of pregnancy discrimination under Title VII, "a plaintiff's qualifications are to be assessed in terms of whether . . . she was meeting the employer's expectations . . . *[p]rior to becoming pregnant*." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (emphasis added).

If the plaintiff establishes the *prima facie* case, a mandatory presumption of discrimination is created, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.

9

If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

### a. *Whether a genuine issue of material fact exists as to whether Plaintiff was qualified for her position*

Defendant first asserts that there is no genuine dispute of material fact as to whether Plaintiff was qualified for three reasons: (1) she had accumulated more points for unsatisfactory attendance than Select's Attendance Disciplinary Action Form states is the minimum that may result in termination; (2) she had been disciplined for a violation of Select's Safe Patient Handling Policy; and, (3) after informing Select of her pregnancy and her doctor's proposed workplace restrictions, and after Select informed her that it could not accommodate the proposed restrictions, she did not sign up for the minimum number of shifts required for per diem employment.

As set forth above, for purposes of the qualification prong in a pregnancy-discrimination case, the Court may only consider whether the employee was meeting the employer's legitimate expectations *prior to* becoming pregnant. Thus, the Court cannot consider her decision not to sign up for the minimum number of shifts after she became pregnant and after Select informed

her that it could not accommodate her doctor's proposed restrictions for purposes of the qualification prong.

With respect to her discipline for attendance and her patient-handling policy violation, the issue becomes murky because, in essence, Select has taken two arguably inconsistent positions. Before she was pregnant, Select decided to allow her to continue to remain employed despite her attendance record and patient-handling violation. However, during the course of this litigation, it has become Select's position that she was not qualified following these violations despite the fact that it continued to employee her.

Select argues that this Court should determine, as a matter of law, that Plaintiff was not qualified at the time she became pregnant by relying on four cases. *See Williams v. AT&T Mobility Srvs., LLC*, 847 F.3d 384, 391-92 (6th Cir. 2017); *Breneman v. MedCentral Health Sys.*, 366 F.3d 412, 418-19 (6th Cir. 2004); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990); *Santana v. U.S. Tsubaki, Inc.*, 932 F. Supp. 189, 191 (N.D. Ohio 1995). These cases involve claims for disability, age, and race discrimination. Although these claims are also analyzed under the *McDonnell-Douglas* framework, the analysis under the qualification prong is not the same as that for pregnancy discrimination.

Specifically, in these cases, the courts were required to consider whether the employee was qualified *at the time the adverse employment action was taken*. *See White v. Duke Energy-Kentucky, Inc.*, 603 Fed. Appx. 442, 446 (6th Cir. 2015) (Title VII); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, n.13 (6th Cir. 1996) (ADA); *McDonald*, 898 F.2d at 1160 (ADEA). In each of these cases, the individuals were terminated because of performance issues that were ongoing at

11

the time of their termination.  Further, there was not a question of fact in the record as to whether that was the employer's reason for the termination.  Thus, these courts concluded that the plaintiffs were not qualified as a matter of law because the evidence was undisputed that the termination decisions were based upon their performance issues.

Here, the undisputed evidence could lead the trier of fact to one of two different conclusions.  The first possible conclusion is that, despite Plaintiff's documented discipline for attendance and a patient-handling violation, when Select considered her overall value as an employee before she became pregnant, it viewed her as qualified to remain employed with the written warnings serving to inform her how she could improve her performance.  The second possible conclusion is that Select considered her to be unqualified before she became pregnant but, for reasons not in evidence, allowed her to remain employed.  Defendants have not cited any cases that require the qualification prong to be determined as a matter of law under these circumstances.  Accordingly, it is RECOMMENDED that a genuine issue of material fact exists as to whether Plaintiff was qualified for her position at the time that she became pregnant.

### b. Whether Select has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination

Even if Plaintiff were to establish her *prima facie* case, the inquiry does not end there.  At that point, the burden would shift to Select to articulate a legitimate, nondiscriminatory reason for her termination.  For purposes of this analysis, the Court need not focus only on the period before she became pregnant, as is required for the qualification prong, and may not consider what *could* or *would* have been a legitimate, non-discriminatory reason for termination.  *See, e.g.,, Asbiel Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-cv-00491, 2022 WL 1283087, at n. 113

(M.D. Tenn. Apr. 28, 2022).  Instead, the Court must look to the actual reason at the time of the termination.

Select's February 3, 2020 letter sets forth its reasoning for terminating her—namely, that Plaintiff had not signed up for the minimum number of shifts required to remain in the PRN pool and required her to do so or be terminated.  Thus, whether Select *could* have terminated her for her earlier attendance points or patient-handling violation is irrelevant.  Even so, it is undisputed that Plaintiff did not sign up for the minimum number of shifts and that Select required this for continued employment.  Therefore, it is RECOMMENDED that Select has articulated a legitimate, nondiscriminatory reason for her termination.[3]

### c. *Whether Plaintiff can demonstrate that Select's proffered reason for her termination is a pretext for discrimination*

Once Select has articulated a legitimate, nondiscriminatory reason for her termination, Plaintiff must establish that the proffered reason is not the actual reason but, instead, is a pretext for discrimination.  To satisfy this prong as a matter of law, Plaintiff must show both that the reason is false and that discrimination was the actual reason for the termination.  Here, Plaintiff has not provided any evidence that signing up for the minimum shifts is not a requirement, and the undisputed evidence shows that Plaintiff was informed by letter that it was so required. Further, Plaintiff admits that she did not meet it because she chose not to return to a position that

---

[3] Plaintiff argues that she did not sign up for the minimum number of shifts because Select was not able to provide a position that was consistent with her doctor's recommendations.  While it is undisputed that Select reviewed its available work assignments and determined that there was no position that could accommodate Plaintiff's restrictions, this is inconsequential because this is not a failure-to-accommodate case under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*.  Thus, the Court need not consider how Select handled her accommodation request or the fact that it had previously been able to accommodate her for purposes of determining whether Select had a legitimate, nondiscriminatory reason for terminating her.

13

required duties beyond those that her doctor deemed permissible. Accordingly, it is RECOMMENDED that there is no genuine dispute of material fact as to whether Select's reason for terminating her is pretextual.

### IV.  Conclusion

For the reasons set forth herein, even if Plaintiff were to establish her *prima facie* case by convincing the trier of fact that she was qualified for her position before she became pregnant and by meeting the remaining undisputed elements of the *prima facie* case, Select has articulated a legitimate, nondiscriminatory reason for her termination, and there is no genuine dispute of material fact as to whether it is pretextual and Select is entitled to a judgment as a matter of law. Accordingly, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

**SIGNED** this 8th day of September, 2022.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**